```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                    NORTHERN DIVISION
                      AT COVINGTON
```

**CIVIL ACTION NO. 2008-104 (WOB)**

**MICHAEL MARTIN**                                                **PLAINTIFF**

**VS.**                     <u>**OPINION AND ORDER**</u>

**JOSEPH SCHUTZMAN and**
**DAN GOODENOUGH**                                                **DEFENDANTS**

On October 19, 2009, oral argument was held on defendants' motion for summary judgment. Robert Abell represented the plaintiff and Jeffrey Mando represented the defendants. Official court reporter Joan Averdick recorded the proceedings.

The court, having thoroughly reviewed this matter, agrees with the state court that Mr. Martin did not commit the offense for which he was charged. Instead, the court finds that there were administrative errors in the probating of Ms. Kuhl's estate, which caused confusion over whether Mr. Martin was entitled to funds he deposited in his personal account. In hindsight, it is clear that Mr. Martin is now, and has always been, entitled to the funds at issue.

Nevertheless, the matter before this court is whether the defendants are liable for violating Mr. Martin's constitutional rights and for state law claims of false arrest and malicious prosecution. The court finds, for the reasons stated below, that the defendants are entitled to summary judgment.

## FACTS

Mr. Martin's mother, Marilyn Kuhl, died in August 2003, and

the plaintiff was named the executor of her estate. Because her estate had assets valued under $35,000, the probate court issued an order relieving it from administration. Her estate left substantial unpaid bills, and plaintiff personally paid more than $29,000 to satisfy her outstanding debts.

Not listed as an asset of the estate was a 1999 Judgment against Charles Martin, plaintiff's father, ordering him to pay Martin's mother for long overdue child support in the amount of $18,000. The Hamilton County Job and Family Services (HCJFS) collected payments on this Judgment from the time of its entry and then sent a monthly check to plaintiff's mother.

During Ms. Kuhl's lifetime, the checks were made payable to her, but were sent to plaintiff's house. Plaintiff deposited the checks into a savings account, which was in his, his wife's, and his mother's name, and he used the funds to pay his mother's bills. After her death, the checks on the Judgment continued to be sent to plaintiff's address, and he deposited them in his personal account to pay himself back for paying the estate's debts. He generally signed the checks with his mother's name, followed by his name, and a designation for power of attorney. He testified that he did not know that the power of attorney expired upon his mother's death.

Apparently, Charles Martin, plaintiff's father who was making payments on the Judgment for child support, found out years after her death that plaintiff's mother had died. Charles Martin complained to HCJFS that he had been making child support

arrearage payments to a dead woman.  Mr. Startzman, the assistant director of HCJFS, began investigating what happened to the checks that were issued after Ms. Kuhl's death.  Mr. Startzman learned that a person by the name of Michael Martin was endorsing the checks and depositing them into his account.

On October 24, 2007, Startzman contacted Officer Wright at the Villa Hills Police Department and explained the situation.  Upon receipt of the information from HCJFS, the matter was assigned to Officer Schutzman, Villa Hills' only investigator and an officer with whom Mr. Martin had had a previous dispute.[1]

Upon completing his investigation, Schutzman submitted his entire file to the Commonwealth Attorney's Office.  Rob Sanders, the Commonwealth Attorney, stated in his affidavit that, in making the decision to prosecute the plaintiff for forgery in the second degree, he reviewed Officer Schutzman's file, including the checks at issue, and the plaintiff's bank records.  Officer Schutzman had also taken a recorded statement from Martin.  A summary of this statement was submitted to the Commonwealth Attorney, along with the tape.  In the statement, plaintiff admitted to signing Ms. Kuhl's name and depositing the checks in his personal account.  He did not mention that the funds were to repay himself for paying estate debts.  Mr. Sanders also considered the statement of the representative of HCJFS that the

---

[1] Martin was a Villa Hills city councilman.

3

checks issued to Ms. Kuhl should have ceased upon her death.[2] He found these facts established more than a reasonable basis to believe that the plaintiff had forged Ms. Kuhl's name to the checks with the intent of keeping the funds to himself without authorization to do so. Accordingly, Mr. Sanders met with Schutzman and drafted the complaint and affidavit to obtain a warrant to arrest the plaintiff for forgery in the second degree. (Sanders Aff. ¶ 11). On December 17, 2007, Schutzman signed the complaint and affidavit, and Sanders presented it to the Kenton District Court.

A judge reviewed the complaint and affidavit, and issued an arrest warrant for Mr. Martin. Mr. Martin turned himself in, posted bond and left without being booked into the detention center.

After turning himself in, plaintiff hired a lawyer and reopened his mother's estate. (Martin depo., p. 111–113). In the reopened estate, plaintiff listed the child support arrearage Judgment as an asset of the estate and identified himself as a creditor of the estate. As a result, the probate court entered an order that plaintiff be reimbursed, for paying off his mother's debts, out of the estate. Accordingly, the HCJFS checks are now issued in the name of Marilyn Kuhl's Estate, Michael Martin, Executor.

On January 15, 2008, Judge Grothaus dismissed the charges

---

[2] The HCJFS official was mistaken in this conclusion because the Judgment was for arrearage in child support.

against the plaintiff, finding that since his arrest the plaintiff had reopened the estate and followed proper probate procedures to have the payee name changed on the checks. Thus, he found no probable cause existed to continue the prosecution against the plaintiff and dismissed the criminal action.

**ANALYSIS**

The plaintiff has asserted four theories of liability: Fourth Amendment malicious prosecution; First Amendment retaliatory prosecution; Fourth Amendment or common law false arrest;[3] and common law malicious prosecution. To succeed on each of these claims, the plaintiff must prove that his arrest or prosecution was pursued without probable cause. *Hartman v. Moore,* 547 U.S. 250, 265-66 (2006) (probable cause must be alleged and proven in a First Amendment retaliatory-prosecution action); *Radavansky v. City of Olmstead Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (to prevail on Fourth Amendment false arrest claim, plaintiff must establish officer lacked probable cause to believe person committed or was committing offense); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007) (Fourth Amendment malicious prosecution claim fails where probable cause existed); *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981) (lack of probable cause for proceeding is an element of Kentucky malicious

---

[3]The complaint does not specify whether plaintiff's false arrest claim is under state law or a § 1983 claim for violation of his rights under the Fourth Amendment. Both, however, require a plaintiff to establish a lack of probable cause to succeed on the claim. See *Radavansky v. City of Olmstead Falls*, 496 F.3d 609, 614 (6th Cir. 2007); *Russell v. Rhodes*, Nos. 2003-CA-000923, 2004-CA-000492, 2005 WL 736612 (Ky. Ct. App. April 1, 2005).

prosecution claim); *Russell v. Rhodes*, Nos. 2003-CA-000923, 2004-CA-000492, 2005 WL 736612 (Ky. Ct. App. April 1, 2005) (Kentucky false arrest claim will not lie where officer had reasonable grounds for arrest). Defendants argue that the plaintiff cannot make such a showing and, therefore, they are entitled to summary judgment.

>The Sixth Circuit has stated:
>
>Probable cause is a "practical, nontechnical conception" that deals with probabilities, not certainties and the "factual and practical considerations of everyday life." [*Illinois v.*] *Gates,* 462 U.S. [213] at 230-31, 103 S. Ct. 2317 [(1983)].  Police have probable cause to arrest a person when they have "reasonably trustworthy information that is sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense based on the facts and circumstances within the police's knowledge at the moment in question."  *Peet v. City of Detroit,* 502 F.3d 557, 563-64 (6th Cir. 2007), [*cert. denied*, ___ U.S. ___, 128 S. Ct. 2430 (2008)] (quotations omitted).  While the police may not ignore known exculpatory evidence in judging probable cause, they are "under no obligation to give any credence to a suspect's story" and need not halt the investigation just because the suspect gives "a plausible explanation" for her conduct.  *Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir. 1988).

*Manley v. Paramount's Kings Island*, 299 F. App'x 524, 528-29 (6th Cir. 2008).

Plaintiff argues that Kenton County District Court's dismissal of the forgery charges for lack of probable cause is evidence that his arrest and prosecution also lacked probable cause.  The Sixth Circuit, however, has held that "[a]n arrest grounded in probable cause does not become invalid merely because the State chooses not to prosecute the individual or a jury opts for acquittal."  *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004) (citing *Criss v. City of Kent*, 867 F.2d

6

259, 262 & n. 1 (6th Cir. 1988)).  Thus, the fact that the criminal action was dismissed for lack of probable cause does not mean that the arrest lacked probable cause.  *Ireland v. Tunis*, 113 F.3d 1435, 1449-50 (6th Cir. 1997).

In Kentucky, forgery in the second degree is defined:

> (1) A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be or which is calculated to become or to represent when completed: (a) A deed, will, codicil, contract, assignment, commercial instrument, credit card or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status. . . .

KRS 516.030(1)(A).

The plaintiff admits that the investigation was initiated because HCJFS contacted the Villa Hills Police Department and asked that it investigate "the seeming conversion of the checks payable to Marilyn Kuhl by Michael A. Martin after her death." (Martin depo., p. 77, ex. C).  In addition, during Officer Schutzman's interview with the plaintiff, the plaintiff admitted that he had signed his mother's name to the checks at issue, signed his own name as her power of attorney, and deposited the checks in his personal savings account.  Schutzman also learned that HCJFS had not been informed of Ms. Kuhl's death, and Mr. Startzman, an attorney with the HCJFS, told Schutzman, albeit incorrectly, that the checks should have ceased upon Ms. Kuhl's death.  In addition, Mr. Startzman told Schutzman that there was no open estate for Ms. Kuhl, only a closed estate, which did not include the child support obligation, the source of the funds, as

an asset of the estate.

Further, facts and circumstances known to Officer Schutzman were sufficient to warrant a reasonable person to suspect that the plaintiff signed the checks, deposited the funds in his personal account, with an intent to defraud or deceive.  First, Officer Schutzman learned that the plaintiff did not inform either HCJFS or his father, from whom the money was being withheld, that his mother had died.  Second, Officer Schutzman learned that the plaintiff did not list the Judgment as an asset of the estate or seek to have the payee on the checks changed.  Third, Officer Schutzman knew, from plaintiff's admission, that he deposited the funds into his personal account instead of an account established to receive funds for the estate.  Fourth, plaintiff told Officer Schutzman that he had a dysfunctional family, and that he originally took over his mom's finances, not because she was incompetent, but to stop her from helping his siblings.  Thus, the evidence supports a finding that an officer might reasonably suspect that the plaintiff was signing the checks and depositing the funds in his personal account in an effort to wrongfully keep the proceeds for himself. The court also considers highly significant that Mr. Martin did not advise Schutzman that he had advanced monies on behalf of the estate, for which he was repaying himself.

Plaintiff argues that Schutzman failed to tell Commonwealth Attorney Sanders, and the judge presented with his affidavit, that Ms. Kuhl's Estate had been probated and that the plaintiff

8

was the executor. He argues that a reasonable officer would know that a judge should have been told of Kuhl's estate, that the checks were being sent to abate a Judgment that was part of the estate, and that plaintiff was the executor.

The Sixth Circuit has held that, when an affidavit contains false statements or material omissions, the question becomes whether the corrected affidavit, minus the false statements or omissions, is sufficient to establish probable cause. *McKinley*, 404 F.3d at 444-45. Here, the complaint and affidavit states:

> Hamilton County (Ohio) Job & Family Services contacted the Villa Hills Police to report child support checks sent to Marilyn Martin[4] being cashed up until October 5, 2006, despite the fact that Marilyn Martin died on August 17, 2003. The checks were mailed to Marilyn Martin at [redacted address] in Villa Hills which is the home of her son, Michael Martin. Many of the checks contained a forged signature of Marilyn Martin and some contained Michael Martin's signature as well. All of the checks were deposited into Michael Martin's checking account at 5/3 Bank in Crescent Springs. Affiant interviewed Michael Martin about the checks. Martin admitted to signing his mother's name to the checks after she was deceased and depositing the checks into his account. Total amount of the checks cashed after Marilyn Martin's death is $4,731.00. It is the belief of the affiant that the defendant did engage in the described actions that are against the PEACE AND DIGNITY OF THE COMMONWEALTH OF KENTUCKY.

(Doc. 17-2)(footnote added)(emphasis in original).

The plaintiff argues that Schutzman should have stated in his affidavit that his mother's estate had been probated and that the plaintiff was the executor. However, those facts alone would not have given Martin authority to deposit checks made payable to his mother into his personal account. In addition, Startzman had

---

[4]Also known as Marilyn Kuhl.

told Schutzman, albeit erroneously, that the checks should have ceased upon Ms. Kuhl's death. Furthermore, at the time of the arrest, the Judgment at issue was not listed as an asset of the estate and the plaintiff had not been listed as a creditor. Thus, there was no evidence in the probate file, prior to plaintiff's arrest, to suggest that the plaintiff, or the estate for that matter, was the proper payee of the checks at issue. (Doc. 17, ex. B). In fact, it was not until after his arrest that the plaintiff reopened the estate and filed documents listing the Judgment as an asset and himself as a creditor.

Further, a review of the transcript for the preliminary hearing in the criminal matter demonstrates that Judge Grothaus dismissed the criminal charges after finding that the plaintiff had since hired an attorney to reopen the estate in order to follow the proper procedures to change the payee on the checks. The judge acknowledged that the confusion in this case was caused by plaintiff's failure to follow custom probate procedures[5] and his lack of knowledge of the law.

The court finds, even assuming Schutzman had stated that plaintiff was the executor of his mother's estate in the affidavit, that those facts alone would not give plaintiff authority to deposit his deceased mother's checks into his personal account. It was not until after the estate was reopened, the Judgment listed as an asset of the estate,

---

[5] The estate had been exempted from ordinary probate as a small estate.

plaintiff identified as a creditor of the estate, and proper procedures followed, that plaintiff could lawfully deposit the checks in his account. Thus, the court finds probable cause existed to support plaintiff's arrest. Again, as the state court held, subsequent filings in the probate court cleared up the confusion and established, without a doubt, that Mr. Martin was indeed entitled to the funds at issue.

Furthermore, the court holds that the evidence supports a finding that it was Commonwealth Attorney Sanders, after review of Officer Schutzman's entire investigative file, who made the decision to prosecute Mr. Martin. Thus, although Officer Schutzman performed the investigation, there is no evidence that he unduly influenced Commonwealth Attorney Sanders's decision. *See Skousen v. Brighton High School,* 305 F.3d 520, 529 (6th Cir. 2002)(officer cannot be held liable for malicious prosecution when he did not make the decision to prosecute).

Further, no municipal policy was identified in the evidence and the City of Villa Hills is further entitled to summary judgment for that reason.

The defendants Schutzman and Goodenough in the alternative are entitled to qualified immunity. For the above reasons, it would not have been apparent to them that forwarding the investigative file to the plaintiff to the Commonwealth Attorney for his review and signing the complaint against the plaintiff violated the plaintiff's constitutional rights.

Therefore, the court having heard arguments of counsel and

11

being advised,

**IT IS ORDERED** that defendants' motion for summary judgment (Doc. 17) be, and it is, hereby **GRANTED**.  A separate judgment shall enter concurrently herewith.

This 21ST day of October, 2009.



Signed By:
William O. Bertelsman   WOB
United States District Judge

TIC: 30 min.

12